IN THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| v. : | |
| : | NO. 04-402 |
| DWAYNE DOLLSON : | |

MEMORANDUM

**Kauffman, J.**                                                                                                                                                                **May 1, 2008**

On February 17, 2005, a jury convicted Defendant Dwayne Dollson of one count of possession with intent to distribute more than 500 grams of cocaine, in violation of Title 21, United States Code, Section 841(a)(1) (Count One), and one count of use of a communication facility in furtherance of a drug crime, in violation of Title 21, United States Code, Section 843(b) (Count Two). On May 31, 2005, this Court sentenced Defendant to 192 months of imprisonment on Count One, 96 months of imprisonment on Count Two to run concurrently to Count One, 8 years of supervised release, a $2000 fine, and a $200 special assessment. Defendant subsequently appealed the conviction and sentence, and the Government cross-appealed the sentence. On June 27, 2007, the Third Circuit affirmed the conviction, but vacated the sentence and remanded the case for resentencing so that the Court could articulate more fully its weighing of the factors set forth in 18 U.S.C. § 3553(a).[1] See United States v. Dollson, 229 Fed. Appx. 83, 86 (3d Cir. 2007). In compliance with the Third Circuit's directive,

---

[1] The Third Circuit stated in its opinion that the Court need not hold the resentencing hearing until the United States Supreme Court issued an opinion in Gall v. United States, No. 06-7649.

1

the Court held a resentencing hearing on March 12, 2008.[2] For the reasons that follow, the Court will impose a sentence of 192 months imprisonment on Count One and 96 months imprisonment on Count Two to run concurrently to Count One, together with all other terms and conditions imposed on May 31, 2005.[3]

**I.    Background**

At the original sentencing hearing on May 31, 2005, the Court heard arguments from counsel for the Government and for Defendant regarding the advisory Sentencing Guidelines and relevant 18 U.S.C. § 3553(a) factors.[4] On appeal, the Government argued that the Court's sentence was both procedurally faulty, because it was justified insufficiently, and substantively unreasonable, because Defendant, a career offender, had not demonstrated mitigating circumstances that would justify a sentence of just slightly more than half of his advisory Guidelines range of 360 months to life. See Dollson, 229 Fed. Appx. at 85. In its opinion, the Third Circuit stated that it "[did] not doubt that the District Court gave thoughtful consideration to the § 3553(a) factors," but that because the Court "did not fully articulate its reasoning or explain the relevance of its observations ... [it was] left with an inadequate record to determine which of the factors predominated in the Court's decision-making process and why." Id. at 86. The Third Circuit remanded the case for resentencing so that the Court could provide a "fuller articulation of the District Court's weighing of the § 3553(a) factors," but expressly stated that it

---

[2]    Prior to the hearing, the parties filed supplemental sentencing memoranda.

[3]    As the Third Circuit noted in its opinion, "[t]here is no disagreement regarding the sentence" imposed on Count Two. Dollson, 229 Fed. Appx. at 85 n.3.

[4]    The Court expressly noted at the initial sentencing that "[t]he basic fundamental question really is how many months are enough to satisfy 3553(a) and the statutory mandatory minimum, and the advisory guidelines." May 31, 2005 Sentencing Hearing Transcript, at 20.

was not reaching the Government's contention that the sentence was unreasonable in light of Defendant's criminal past.  Id. at 86, 87.

## II.     Legal Standard

In its recent decision in Gall v. United States, --- U.S. ---, 128 S. Ct. 586 (2007), the Supreme Court explicitly rejected the notion that a sentence outside the Guidelines range is presumptively unreasonable, or that a departure from the Guidelines must be justified by "extraordinary" circumstances:

> We reject, however, an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range.  We also reject the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence.
>
> As an initial matter, the approaches we reject come too close to creating an impermissible presumption of unreasonableness for sentences outside the Guidelines range .... Even the Government has acknowledged that such a presumption would not be consistent with Booker.

Id. at ---, 128 S. Ct. at 595 (citations omitted).

The Gall Court instructed that a district court should begin all sentencing proceedings by correctly calculating the applicable Sentencing Guidelines range.  Id. at ---, 128 S. Ct. at 596.  Next, the court must give both parties "an opportunity to argue for whatever sentence they deem appropriate."  Id.  After hearing from the parties, the court must consider all of the § 3553(a) factors "to determine whether they support the sentence requested by a party."  Id.  The more significant the deviation from the Sentencing Guidelines, the more substantial the justification must be.  Id. at ---, 128 S. Ct. at 597 ("[W]e find it uncontroversial that a major departure should be supported by a more significant justification than a minor one.").  After determining the appropriate sentence, the district judge must explain adequately the chosen sentence to allow for

meaningful appellate review. Id.

In another recent decision, Kimbrough v. United States, --- U.S. ----, 128 S. Ct. 558 (2007), the Supreme Court held that the crack and powder cocaine ratio is advisory, and that district courts may deviate from the cocaine Sentencing Guidelines. As the Court explained, "[a] district judge must include the Guidelines range in the array of factors warranting consideration. The judge may determine, however, that in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing." Id. at ---, 128 S. Ct. at 564. The Court instructed that "district courts must treat the Guidelines as the starting point and the initial benchmark," but recognized that the sentencing judge has "greater familiarity with the individual case and the individual defendant before him than the [sentencing] commission or the appeals court," and is therefore "in a superior position to find facts and judge their import under § 3553(a) in each particular case." Id. at ---, 128 S. Ct. at 574.

### III.     Discussion

#### A.     Advisory Guidelines Range

At Defendant's initial sentencing, the Court calculated Defendant's offense level to be **37** and his criminal history category to be **VI**, thus yielding an advisory Sentencing Guidelines range of **360 months to life** of imprisonment.[5] The Court also noted that Count One carries a mandatory minimum sentence of 10 years of imprisonment pursuant to 21 U.S.C. § 841(b)(1)(B). On appeal, the Third Circuit found that the Court had calculated correctly the advisory

---

[5] Defendant's advisory Guidelines range takes into account his status as a career offender pursuant to U.S.S.G. § 4B1.1. If Defendant had not qualified for career offender status, his offense level would have been 26 and his criminal history category would have been VI, yielding an advisory Guidelines range of 120-150 months of imprisonment.

Guidelines range, see Dollson, 229 Fed. Appx. at 85, and at the March 12, 2008 resentencing hearing, both parties agreed that this is the correct advisory Guidelines range.

### B. The § 3553(a) Factors

Section 3553(a) instructs the Court to consider the nature and circumstances of Defendant's offenses, as well as his history and characteristics. It also requires the Court to impose a sentence "sufficient, but not greater than necessary," to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to the criminal conduct, to protect the public, and to provide the defendant with needed educational and vocational training or other correctional treatment. In addition, Section 3553(a) requires the Court, when fashioning an appropriate sentence, to consider the types of sentences available, the need to avoid unwarranted sentence disparities among defendants with similar records, and the need to provide restitution to any victims in the case.

#### 1. The nature of the offenses

Defendant's offenses consisted of possessing with the intent to distribute 1.02 kilograms of cocaine and using a communication facility, in this case the United States Postal Service, to facilitate that crime.

#### 2. Defendant's history and characteristics

Defendant is a career offender. He served 14 years in prison for a 1987 attempted murder. He has been convicted of multiple drug felonies, including one that occurred while he was imprisoned for attempted murder. In total, Defendant has five prior felony offenses that qualify under the career offender provision, U.S.S.G. § 4B1.1. Moreover, at the time the instant offenses occurred, he was on a three year term of probation for one of his prior drug offenses.

The Court recognizes the seriousness of the instant offenses and Defendant's criminal history; however, the Court must look at the totality of the circumstances and take into consideration other aspects of Defendant's history and characteristics in fashioning a sentence that is "sufficient, but not greater than necessary."

Defendant was raised by his maternal grandparents because his mother died when he was very young, and he has had virtually no contact with his father throughout his life.[6]  He married for the first time when he was 17 years old and had his first child, and he claims the resultant financial strain led him down a criminal path to support his family.  See March 12, 2008 Resentencing Hearing Transcript, at 9.  Defendant did not complete high school; however, he obtained his GED in 1991 during a previous incarceration.  See id. at 10.  He also took college courses, enrolled in barber school, and took pesticide classes.  See id.  During his incarceration for the instant offenses, he has completed college courses and basic business classes for PowerPoint, Microsoft, and keyboarding.  See id.  In addition, he has worked steadily as a nursing assistant in the medical facility at FCI Butner and in maintenance, cleaning the hospital wards and sanitizing the medical equipment.  See id.  He has not committed any infractions during the instant incarceration.  See id.

At his resentencing hearing, Defendant spoke of how his experiences at the medical facility, in particular, have had an extraordinary impact on him because he has seen fellow

---

[6] Although "lack of guidance as a youth or similar circumstances indicating a disadvantaged upbringing are not relevant grounds in determining whether a *departure* is warranted," see U.S.S.G. § 5H1.12 (emphasis added), such information is relevant to the Court's weighing of the Section 3553(a) factors.  Cf. United States v. Martin, 2008 WL 748104, at *5-6 (1st Cir. Mar. 21, 2008) (noting that although U.S.S.G. § 5H1.6 generally discourages consideration of family circumstances during sentencing, the district court may consider "idiosyncratic" family circumstances when fashioning a variant sentence).

inmates pass away in prison without ever having the opportunity to return home, and has realized that such a fate is a possibility for him if he continues with his criminal activity. See id. at 29. The Court gives great weight to the insight toward rehabilitation that Defendant has gained through this job, as well as to his recognition that he must take responsibility for his own actions and not continue to lead a life of crime.

      Of particular concern to the Court are Defendant's teenaged son and his young daughter. Prior to his incarceration for the instant offenses, Defendant lived with his wife and both children.[7] However, since his incarceration, his wife and daughter have been forced to leave their family home and reside with relatives, while his son has been bounced between the homes of friends and family. See id. at 31-32. At the resentencing hearing, Defendant spoke of how he has prioritized taking business and computer classes during the instant incarceration so that he could become a productive member of society upon his release from prison and ensure that he is present in his children's lives going forward. See id. at 28, 32-33. Based on the impact his experiences in the FCI Butner medical facility have had upon him, he has also looked into whether there are states that will allow him to become involved in the nursing field despite his status as a convicted felon. See id. at 29. The Court believes that Defendant's remorse with respect to the impact his crimes have had on his family is sincere, and finds that the lengths to which he has gone prepare himself for his eventual release from prison are both significant and unusual for a career offender.

---

[7] As Defendant noted during his initial sentencing and at his resentencing, he took custody of his son immediately following his release from prison on the attempted murder charge. See May 31, 2005 Sentencing Hearing Transcript, at 27; March 12, 2008 Resentencing Hearing Transcript, at 33.

### 3. The need for the sentence imposed

Section 3553(a)(2) requires the Court to impose a sentence that reflects the seriousness of the offenses, promotes respect for the law, and provides just punishment for the offenses. It also requires the Court to fashion a sentence that affords adequate deterrence and protects the public from future crimes of the defendant. Finally, it instructs the Court to dispense a sentence that will provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The Court is highly mindful of the seriousness of the offenses in this case. In its resentencing memorandum, the Government pointed out that 1.02 kilograms of cocaine equates to approximately 250-400 doses if it is not broken down with a cutting agent, and that at the time of the offenses, the quantity of cocaine at issue had a street value of approximately $25,000. See Government's Resentencing Mem. at 7. Indeed, Congress has seen fit to impose a ten-year statutory mandatory minimum term of imprisonment for Count One due to its seriousness. Moreover, the Court is aware that Defendant's past history involves a crime of significant violence as well as multiple drug offenses. However, Defendant's conviction for attempted murder occurred almost twenty years ago when he was 19 years old, and his subsequent crimes have not been crimes of violence. Although outside the advisory Guidelines range for this Defendant, a term of imprisonment of 192 months is certainly a substantial sentence and is 72 months more than the mandatory minimum in this case. Furthermore, it is longer than any other sentence Defendant has served in the past, and based on his testimony at the resentencing hearing, the prospect of serving a lengthy sentence appears to have at last instilled in Defendant a respect for the law and a realization that he will spend the rest of his days in jail if he continues

his life of crime. See March 12, 2008 Resentencing Hearing Transcript, at 27 ("For any man, anything over ten years is a long time especially when he [has] little ones already. For me to have 16, and maybe have 30, I look at that and say 'Wow, you know, you have to make better decisions. This can't be again, you can't allow this to happen to yourself.'").[8] Accordingly, the Court believes a sentence of 192 months to be "sufficient but not greater than necessary" to reflect the seriousness of Defendant's offenses, provide just punishment for his crimes, and deter him from engaging in future criminal conduct.

In addition, the Court believes that a sentence of 192 months will provide adequate deterrence to others who are considering a similar path. Defendant was 35 years old when he entered prison for the instant offenses and will be in his 50's when he is released, having missed the formative years of his children's lives. Others looking to achieve material gain for either themselves or their families need only look to Defendant to realize that the long-term costs of committing similar crimes are steep. Moreover, a sentence of 192 months is sufficient to protect the public from further crimes by this particular defendant – he already has demonstrated his effective efforts toward rehabilitation and education and he has developed a mindset aimed at avoiding his past mistakes and becoming employable so that he never will return to crime upon his release from prison.

Given the great strides that Defendant has made in his educational and professional training during his incarceration, the Court believes that the sentence imposed will be sufficient to offer Defendant the educational and vocational experiences that he needs in order to become a

---

[8] "[W]hen I was sentenced in 2005, I said that this would never happen again, never would I appear before Judge Kauffman or any other judge ever again." March 12, 2008 Resentencing Hearing Transcript, at 27.

productive member of society upon his release. The Court also believes that a longer sentence would be "greater than necessary," in that it would undermine rather than aid Defendant's efforts to rehabilitate and become a productive member of society. See Gall, --- U.S. at ---, 128 S.Ct. at 599 (quoting the district court's conclusion that " a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing."). A sentence of 16 years means that Defendant will still have an opportunity to join the work force upon his release and devote a meaningful number of years to utilizing the vocational skills that he has developed during his incarceration.

### 4. The kinds of sentences available

Section 3553(a)(3) requires the Court to consider the kinds of sentences available, including non-incarcerative alternatives. See Gall, --- U.S. at ---, 128 S. Ct. at 602 ("The Guidelines are only one of the factors to consider when imposing [a] sentence, and § 3553(a)(3) directs the judge to consider sentences other than imprisonment."). In the instant case, however, incarceration is required, and Count One requires at least a ten-year mandatory minimum prison term.

### 5. The need to avoid unwarranted sentencing disparities

The Government urges the Court to avoid a substantial departure from the advisory Guidelines range, arguing that it would create unwarranted sentencing disparities. The Supreme Court addressed a similar concern in Kimbrough. While stressing that sentencing uniformity "remains an important goal of sentencing," the Supreme Court noted that "some departures from uniformity [are] a necessary cost of the remedy." Kimbrough, --- U.S. ---, 128 S. Ct. at 574. This

Court recognizes the disparity between the instant sentence and that of some other career offenders.  However, the Court also recognizes that Defendant's genuine remorse, attempts at rehabilitation, and efforts to prepare himself to be a productive member of society upon his release distinguish him from many other career offenders.  Therefore, in this case, some disparity is necessary in order to reflect the totality of the circumstances presented to the Court.

      **6.**    **The need to provide restitution to victims**

Restitution is not at issue in this case.

**IV.**    **Conclusion**

For the foregoing reasons, the Court concludes that under the totality of circumstances of this case, a sentence of 192 months imprisonment on Count One and 96 months imprisonment on Count Two to run concurrently to Count One is "sufficient but not greater than necessary."  The Court's previously-imposed Order regarding Defendant's supervised release, fine, special assessment, and conditions following his release from imprisonment shall remain in effect.  An appropriate Judgment Order will follow.

                                                                     **BY THE COURT:**

                                                     **S/ BRUCE W. KAUFFMAN**
                                                     **BRUCE W. KAUFFMAN, J.**